IN THE UNITED STATES DISTRICT COURT,
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BRENDA and JOHN SPURLOCK,          *

    Plaintiffs,                              *

                                  *

v.                                                  *    Case Number : 3:06CV 1026- MEF

                                  *

GREEN TREE-AL LLC, et al.,          *

    Defendants.                           *

## MOTION OF GREEN TREE-AL LLC
## TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**COMES NOW** Green Tree-AL LLC ("Green Tree"), and hereby moves this Court to issue an order compelling the claims of the Plaintiffs to arbitration pursuant to the Arbitration Agreement executed by Plaintiff Brenda Spurlock in connection with the purchase and financing of the manufactured home made the basis of this lawsuit. As grounds for this motion, Green Tree avers as follows:

1.      On or about February 26, 1996, Brenda Spurlock ("Spurlock") financed the purchase of a manufactured home through an Installment Note, which is now being serviced by Green Tree and its affiliate, Green Tree Servicing LLC. In her Complaint, Spurlock and John Spurlock bring claims of invasion of privacy arising out of and relating to Green Tree's servicing of the Installment Note. Green Tree denies the commission of any wrongful acts and hereby submits that the Plaintiffs must submit their claims to binding arbitration in accordance with the Arbitration Agreement executed by Brenda Spurlock in connection with

her purchase and financing of the Home.

2.     The Arbitration Agreement executed by Brenda Spurlock states as follows:

"Any controversy or claim . . . arising out of or relating to the interpretation, performance or breach of any provision of Retail Installment Contract dated 2/26/96 on a 1996 Buccaneer 80x 28 Serial # ALBUS-24636 AB shall be settled exclusively by arbitration (in accordance with the rules and requirements of the American Arbitration Association.)"

[*See* Ex. I to Conway Aff.].

3.     The Federal Arbitration Act, 9 U.S.C. § 1, et seq., (hereinafter "FAA") provides that a "written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or . . . an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable . . . . " 9 U.S.C. § 2. The United States Supreme Court has ruled that an arbitration agreement executed in a transaction affecting interstate commerce is specifically enforceable under the FAA. *See Citizens Bank v. Alafabco*, 123 S.Ct. 2037 (2003).    In determining whether to order arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

4.     As affirmatively appears from the affidavit testimony of Deon Conway, the Arbitration Agreement, and the transactions in issue in this case "affect" interstate commerce

2

thus triggering the FAA because, among others, floor-plan financing was provided by an out-of-state lender that was paid off from the proceeds of the sale and financing transaction. *See, e.g., Green Tree Financial Corp. v. Channell,* 825 So. 2d 90 (Ala. 2002); *Green Tree Financial Corp. v. Lewis*, 813 So. 2d 820 (Ala. 2001). Moreover, the affidavit testimony of Deon Conway and the allegations in the Complaint show that the case involves allegations of the use of the instrumentalities of interstate commerce in that the Complaint asserts that Green Tree made harassing phone calls which would have occurred across state lines. *See Selma Medical Center, d/b/a Columbia Four Rivers Medical Center v. Fontenot*, 824 So. 2d 668 (Ala. 2001).

5.     The Alabama Supreme Court has construed, upheld and enforced similar arbitration agreements on numerous occasions. *See, e.g., Conseco Finance Corp.-Alabama v. Salter,* 846 So. 2d 1077 (Ala. 2002); *Conseco Finance Corp. v. Murphy,* 841 So. 2d 1241 (Ala. 2002); *Lewis v. Conseco Finance Corp.*, 848 So. 2d 920 (Ala. 2000); *Conseco Finance Corp.-Alabama v. Boone,* 838 So. 2d 370 (Ala. 2002); *Green Tree Financial Corp. v. Channell,* 825 So. 2d 90 (Ala. 2002); *Green Tree Financial Corp. v. Lewis*, 813 So. 2d 820 (Ala. 2001); *Green Tree Financial Corp. v. Shoemaker,* 775 So. 2d 149 (Ala. 2000); *Ex parte Stamey*, 776 So. 2d 85 (Ala. 2000); *Green Tree Financial Corp. of Ala. v. Vintson,* 753 So. 2d 497 (Ala. 1999); *Green Tree Financial Corp. of Ala. v. Wampler,* 749 So. 2d 409 (Ala. 1999); *Ex parte Smith*, 736 So. 2d 604 (Ala. 1999); *Patrick Home Center, Inc. v. Karr,* 730 So. 2d 1171 (Ala. 1999); *Ex parte Parker*, 730 So. 2d 168 (Ala. 1999); *Green Tree Financial*

*Corp. v. Davis*, 729 So. 2d 329 (Ala. 1999); *Ex parte Napier*, 723 So. 2d 49 (Ala. 1998); *Green Tree Agency, Inc. v. White*, 719 So. 2d 1179 (Ala. 1998); *Ex parte Gates*, 675 So. 2d 371 (Ala. 1996).

6.     The arbitration provision is sufficiently broad to encompass the Complaint allegations since it requires arbitration of all disputes and claims arising from and relating to the Installment Note, the performance of the Installment Note and the breach of the Installment Note. *See, e.g.*, *Green Tree Financial Corp. v. Shoemaker*, 775 So. 2d 149, 151 (Ala. 2000)(noting that "There can be nothing more 'relating to' a financial transaction than the efforts a party takes to collect a debt created as part of that transaction."). Further, the Arbitration Agreement inures to the benefit of Green Tree since Green Tree is the servicer of the Installment Note and since it is the assignee of the servicing rights of the indebtedness. *See, e.g.*, *Green Tree Financial Corp. v. Channell*, 825 So. 2d 90 (Ala. 2002); *Ocwen Loan Servicing LLC v. Washington*, 2006 Ala. LEXIS 63 (Ala. Mar. 17, 2006)(finding that servicer of a loan could compel arbitration under an arbitration agreement contained in the mortgage between the debtor and the originating creditor).

7.     John Spurlock must also arbitrate his claims under the doctrines of equitable estoppel, intertwining and third-party beneficiary status because Brenda Spurlock must arbitrate her claims; his claims are intertwined, indistinguishable and dependent upon those of Brenda Spurlock and the Installment Note; and John Spurlock seeks benefits and asserts claims founded upon the Installment Note. *See, e.g., Ex parte Stamey*, 776 So. 2d 85, 98

4

(Ala. 2000); *Ex parte Dyess*, 709 So. 2d 447 (Ala. 1997*); Credit Sales, Inc. v. Crimm*, 815 So.2d 540 (Ala. 2001).

8.    Pursuant to 9 U.S.C. § 3, this Court should stay all proceedings, including discovery, in the case pending the conclusion of the arbitration. *See, e.g., Mitchell Nissan, Inc. v. Foster,* 775 So. 2d 138 (Ala. 2000) ("[t]rial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement."); *Green Tree Financial Corp. of Ala. v. Vintson,* 753 So. 2d 497 (Ala. 1999); *Coastal Ford, Inc. v. Kidder,* 694 So. 2d 1285, 1288 (Ala. 1997).

9.    In support of this motion, Green Tree relies upon the pleadings of record and the attached exhibits (**Exhibits 1** and **2**).

WHEREFORE, Green Tree-AL LLC respectfully moves the Court for the issuance of an order compelling the Plaintiffs' claims to arbitration pursuant to the Arbitration Agreement executed by Brenda Spurlock.

Respectfully submitted this the 15th day of November, 2006.

R. AUSTIN HUFFAKER, JR. (HUF006)
Attorney for Green Tree-AL LLC

OF COUNSEL:
RUSHTON, STAKELY, JOHNSTON &
    & GARRETT, P.A.
Post Office Box 270
Montgomery, AL 36101
(334) 206-3100 Telephone
(334) 262-6277 Facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon the following by placing a copy thereof in the United States Mail, postage prepaid and properly addressed on this the 15 th day of November, 2006:

Andy Nelms
LAW OFFICES OF JAY LEWIS
847 S. McDonough Street
Montgomery, AL 36104

OF COUNSEL

6

## AFFIDAVIT OF DEON CONWAY

STATE OF  GEORGIA  )

COUNTY OF  BARTOW  )

     Before me, the undersigned Notary Public in and for said state and county, personally appeared Deon Conway, who is known to me, and who being by me first duly sworn, deposes and states as follows:

     1.    I am Deon Conway, Operations Manager for Green Tree Servicing LLC, which is an affiliate of Green Tree-AL LLC ("Green Tree").   I am one of the persons who has custody and control over Green Tree's business records.  These records were made at or near the time of the event recorded by a person with knowledge of the event and charged with the responsibility for recording such events.  These records are kept in the ordinary course of business for Green Tree's regularly conducted business activity, which is Green Tree's customary practice.  I have thoroughly reviewed Green Tree's file on this particular account, which leads me to the summary that is set forth below.  All documents attached hereto are true and correct copies of business records described herein.  All facts set forth herein are either facts of which I have personal knowledge or are an accurate summary of Green Tree's business records as attached hereto.  I give this Affidavit in the action styled *Brenda Spurlock, et al. v. Green Tree-AL LLC*, case number CV-06-352 pending in the Circuit Court of Russell County, Alabama.

     2.    Green Tree Servicing LLC and Green Tree-AL LLC are limited liability companies formed under the laws of the state of Delaware and maintain their principal places of business in St. Paul, Minnesota.  Conseco Finance Corp.-Alabama was a Delaware corporation with its principal place of business in St. Paul, Minnesota.

     3.    Green Tree's business records, particularly the Installment Note, Security Agreement and Disclosure Statement ("Installment Contract"), reflect that Brenda Spurlock purchased a new 1996 Buccaneer manufactured home  (hereinafter "the Home"), on or about February 26, 1996 from C & C Manufactured Homes, Inc.  Spurlock financed the Home through the Installment Contract, which was assigned to Cavalier Acceptance Corp.  A true and correct copy of the Installment Contract and

1



Bill of Sale is attached hereto as **Exhibits A** and **B**. At the time of purchase, the Home was floor-planned through Deutche Financial Services Corporation ("Deutche"), whose office was located in Atlanta, Georgia. A true and correct copy of the Original Invoice is attached hereto as **Exhibit C**.

    4.    The financing transaction with respect to the purchase of the Home by Spurlock was handled by Cavalier Acceptance Corporation ("CAC"). During the financing of the transaction, CAC issued a check in the amount of $43,734.00 to Deutche to pay off its floor-plan loan. A true and correct copy of the check is attached hereto as **Exhibit D**. Further, attached hereto as **Exhibits E, F** and **G** are additional documents associated with the payoff of the Deutche loan. Also, attached hereto as **Exhibit H** is a copy of an invoice from Kaufman Supply with an address in Atlanta, Georgia.

    5.    In connection with the sale and finance transaction, Spurlock executed an Arbitration Agreement, a copy of which is attached hereto as **Exhibit I**.

    6.    Green Tree Servicing LLC and its affiliate, Green Tree, are the current servicers of the Installment Contract. I have read the Complaint filed against Green Tree in this matter. The Complaint asserts claims based upon alleged communications between Green Tree and the Plaintiffs. These communications would have occurred, if at all, from offices located outside the State of Alabama, including but not limited to offices in Georgia. Further, any communications between the parties would have arisen out of and related to the servicing of the Installment Contract, the indebtedness created by the Installment Contract, the payment obligations under the Installment Contract, and any default under the Installment Contract.

DEON CONWAY

SWORN TO AND SUBSCRIBED before me this _6th_ day of _November_ 2006.

(SEAL)

Notary Public

My Commission Expires:_____ My Commission Expires March 6, 2010

2

**INSTALLMENT NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT**

AL-FIXED
F006 1/92

SSN: 424/90/644   #2275                          Date of the loan: 02-26-96          19
                                                 (Date of disbursement of loan proceeds)

| Debtor: BRENDA T. SPURLOCK | Secured Party: C&C MANUFACTURED HOMES |
| Name of Buyer | Seller; the creditor making the disclosures in this transaction. |
| Name of Co-Buyer | |
| 128 THE LANE | 607 SOUTH 6TH STREET |
| Residence Address | Address |
| PHENIX CITY RUSSELL AL 36869 | OPELIKA LEE AL 36801 |
| City      County      State      Zip | City      County      State      Zip |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 7,675.00 |
|---|---|---|---|---|
| 9.75 % | $ 96,143.00 | $ 57,454.00 | $ 153,597.00 | $ 161,272.00 |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 300 | 511.99 | March 26, 1996 |

**Security:** You are giving a security interest in:          Recording Fee: $      33.00
☒ the goods or property being purchased.
☐ (brief description of other property).

Collateral securing other credit extended by C&C MANUFACTURED HOMES
may also secure this Note.                                    (Creditor)
**Late Charge:** If a payment is ☒ more than 15 days late, you will be charged 5% of the amount that is late, but not more than $15.
☐ late 10 days or more, you will be charged 5% of the amount that is late, but not less than $.50 or more than $100.
**Prepayment:** You may prepay this Note, in full or in part, at any time without penalty.
**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.
**Insurance**
Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | | |
|---|---|---|---|
| Credit Life—one insured | $ 0.00 Term 0 months | I want credit life insurance. | Signature |
| Credit Life—two insureds | $ 0.00 Term 0 months | We want credit life insurance. | Signature 1 Signature 2 |
| Credit Disability one insured | $ 0.00 Term 0 months | I want credit disability insurance. | Signature |

You may obtain property insurance from anyone you want that is acceptable to C&C MANUFACTURED HOMES
                                                                                        (Creditor)
If you get the insurance from C&C MANUFACTURED HOMES                you will pay:
                          (Creditor)
Property Damage Insurance  $        0.00 for    0    months' coverage.
Flood Insurance            $        0.00 for    0    months' coverage.
VSI Insurance              $        0.00 for    0    months' coverage.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Amount Financed Itemization**
Itemization of the Amount Financed of          $ 57,454.00
$ 57,421.00            Amount paid on your account       Amount paid to others on your behalf:
Prepaid Finance Charges:                                 0.00    to credit reporting agencies
                                                         0.00    to insurance companies

EXHIBIT
A

Prepaid Interest   0.00 to   0.00   $   0.00   to   33.00   RECORDING FEE   month extended warranty contract

Total Prepaid Finance Charges   $   0.00   $   0.00

**1. Meaning of Terms; Parties.** As used herein, except where the context clearly requires a different meaning, the words you and your mean the Buyer identified above, and if there is more than one Buyer, means each of the Buyers and also all of them; Seller means the Seller identified above; CAC means Cavalier Acceptance Corporation, its successors and assigns; we, our and us mean the Seller and also any party, such as CAC, to whom this Note may be assigned; Manufactured Home means the Manufactured Home described in paragraph 4 of this Note; Homesite means the Buyer's residence address described above upon which the Manufactured Home will be placed; and this Note means this Installment Note, Security Agreement and Disclosure Statement.

**2. Payment Schedule.** You promise to pay to us the principal sum of
\*\*\* FIFTY SEVEN THOUSAND FOUR HUNDRED FIFTY FOUR & 00/100 \*\*\*\*\*\*\*\*\*\*\* Dollars
($ 57,454.00 ), together with interest thereon at the rate of 9.75 % per annum from the date hereof until this Note is paid in full,
in 300 monthly payments of $ 511.99 each and 1 final payment of $ 0.00 . The first payment is due on
19 , and another such payment is due on the same day of each month thereafter until said sum and the interest thereon is paid in full.

**3. Late Charge; Interest After Maturity.** If any payment is ☒ more than 15 days late, you agree to pay a Late Charge of 5% of the amount of each payment which is late, but not more than $15.00 ☐ late 10 days or more, you agree to pay a Late Charge of 5% of the amount of each payment which is late, but not less than $.50 or more than $100. We will not collect more than one Late Charge on each payment which is late, and we will not collect a Late Charge on the final payment or if we collect interest after maturity. You agree to pay interest on the unpaid balance due under this Note after final maturity, whether by acceleration or otherwise, at the rate set forth in paragraph 2 hereof.

**4. Security Interest.** To secure the payment and performance of all of your obligations under this Note, you hereby grant to us a security interest in the property described below, all accessories now or within 20 days hereafter installed in or affixed to that property, and all accessions at any time hereafter installed or affixed to that property. (All of the property, accessories, and accessions just described and described below are sometimes referred to in this Contract as the "Collateral".)

| Description of Property | New or Used | Make | Model | Width and Length | Serial No. | Primary Use of Collateral |
|---|---|---|---|---|---|---|
| Manufactured Home | | | | | | ☒ Personal |
| | 1996 NEW | BUCCANEER | 80 | 28 | ALBU524636AB | ☐ Business |
| | | | | | | ☐ Agriculture |

Equipped with: ☒ furniture ☒ refrigerator ☒ range ☐ dishwasher ☒ clothes washer
☒ clothes dryer ☒ air conditioning ☐ other

Our security interest also covers all proceeds of the Collateral, including the proceeds of all insurance on the Collateral. As additional security, you hereby assign to us all returned and unearned premiums on all insurance you may have on the Collateral at any time.
Other collateral:

**5. Insurance.** If the Amount Financed disclosed above exceeds $300 (exclusive of charges for insurance) you agree to keep the Collateral insured at all times against loss, theft and damage (including damage by flood and/or vendor's single interest insurance if we require such coverage) under a policy or policies of insurance which provide for payment to us in the event of a loss covered by the policy. YOU MAY CHOOSE THE PERSON THROUGH WHICH PROPERTY DAMAGE INSURANCE IS OBTAINED. YOU HAVE THE OPTION OF PROVIDING ANY SUCH INSURANCE THROUGH AN EXISTING POLICY OR A POLICY INDEPENDENTLY OBTAINED AND PAID FOR BY YOU. We may, for reasonable cause, refuse to accept any insurer which you offer to provide. If you ever fail to maintain any insurance required under this Note, we may, at our election, either purchase that insurance or, after giving 10 days notice to you, purchase insurance covering only our interest in the Collateral, as provided in paragraph 25 on the reverse side of this page.

**6. Waiver of Warranties.** You hereby waive, and we disclaim, all warranties, express or implied, with respect to the Collateral, including implied warranties of MERCHANTABILITY and FITNESS FOR A PARTICULAR PURPOSE, except you do not by this Note waive (a) the express written warranties, if any, given to you by the manufacturer(s) of the Collateral or any part of the Collateral, or (b) any separate written warranty on the Collateral, or any part of the Collateral, given to you by the Seller. You will have the rights and remedies provided in those separate warranties and your waiver of implied warranties with respect to any of the Collateral covered by any such written warranty will not be effective until the separate written warranty has expired.

**7. Prepayment.** You may prepay this Note, in full or in part, at any time without penalty. If you pay this Note in full before its scheduled maturity, you will receive a refund of credit of any unearned interest, as calculated by the actuarial method. Unless we are prohibited from doing so by applicable state or federal laws or regulations, (a) we will retain the origination fee and any discount points; and (b) we will not include the origination fee and any discount points as interest for purposes of the calculation of the refund or credit. No refund of less than $1 will be made. In the event the maturity date of this Note is accelerated, the amount of any such unearned interest will be credited against the balance due as if this Note had been paid in full on the date of acceleration.

**8. Default; Entire Balance Due.** You will be in default under this Note and, after we provide you with any notices or opportunities to cure as may be required by federal or state law, we can, at our option, require that you pay to us at once the entire unpaid balance and all other charges then owed under this Note, if any, with or without further notice to or demand upon you, (a) if you fail to make any payment under this Note or under any other agreement you have with us exactly when it is due; (b) if you break any of the agreements you have made in this Note or in any other agreement you have made with us in connection herewith; or if any representation you have made in this Note is not true; (c) if you or any guarantor of this Note dies; or becomes insolvent, or files a petition for relief under any chapter of the bankruptcy code; (d) if a judgment is entered against you or any guarantor of this Note in any court; or (e) if anything else happens which we reasonably feel endangers the Collateral or impairs your ability to pay us.

**9. Collection Costs and Attorney's Fees.** If the Amount Financed disclosed above exceeds $300, you agree to pay all costs we incur in collecting this Note, including reasonable attorney's fees if we refer the unpaid balance of this Note for collection to an attorney who is not our salaried employee for collection.

**10. Waiver of Demand and Presentment; Waiver of Exemptions.** You agree that you will do everything you have agreed to do under this Note without requiring that we ask you to do it and without requiring that we first present this Note to you. You hereby waive as to this Note and all your obligations to us hereunder, but solely as regards the Manufactured Home, all exemptions from attachment, levy, and sale under the legal process for the collection of this debt; provided, however, that no consumer protection provision of the Alabama Consumer Credit Act and no limitation on garnishments under federal or state law is waived hereby.

BY SIGNING BELOW YOU AGREE TO ALL OF THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS PAGE, AND YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETED COPY OF THIS CONTRACT. THE SIGNATURES BELOW ARE MADE UNDER SEAL.

**NOTICE: See Reverse Side for Additional Terms**

WARNING—Any person who knowingly makes a false statement or a misrepresentation in this Note (including the Guaranty Agreement and the Dealer's Assignment), or causes such a false statement or misrepresentation to be made, shall be subject to a fine of not more than $5,000 or imprisonment for not more than two years, or both, under provisions of the United States Criminal Code, and may also be subject to civil liability for damages under the laws of the State of Alabama.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Seller   CRC MANUFACTURED HOMES

By   KW   x Brenda J Whitlock (L.S.)
                                          Buyer's Signature

Title   Finance Mgr   x _____ (L.S.)
                                          Buyer's Signature

                          x _____ (L.S.)
                          Payment Guaranteed — See Guaranty
                          Agreement on Reverse Side

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## GUARANTY AGREEMENT

Each person signing above the words "Payment Guaranteed" on the reverse side of this page makes the following agreement with every owner of this Installment Note, Security Agreement and Disclosure Statement (the "Note"), and acknowledges receipt of the separate Notice to Cosigner.

You the person signing as guarantor, guarantee the prompt and unconditional payment and performance of all of the Buyer's obligations under the Note. If the Buyer fails to pay any sum under the Note when it is due to be paid, whether at original maturity or by acceleration, you agree that you will pay the full amount owed by the Buyer under the Note. If the original amount financed exceeds $300, you will also pay a reasonable attorney's fee, not to exceed 15% of the unpaid debt after default if the holder of the Note refers it to an attorney who is not its salaried employee for collection of the Note or this Guaranty Agreement. Your obligations under this Guaranty Agreement will not be affected by any extension, renewal, or other change in the time of payment under the Note, or any change in the manner, place or terms of payment under the Note, or the release of or compromise with the Buyer or any other party obligated to pay the sums owed by the Buyer under the Note, or the release of, or failure to perfect any lien or security interest in, any Collateral for the Buyer's obligations under the Note or your obligations under this Guaranty Agreement. The holder of the Note will not be required to exhaust its recourse against the Buyer or any other person or any Collateral for the Buyer's obligations under the Note or your obligations under this Guaranty Agreement before being entitled to receive payment from you under this Guaranty Agreement. You hereby waive demand, presentment, dishonor, notice of dishonor and notice of acceptance of this Guaranty Agreement by the holder of the Note. If there is more than one Buyer on the Note, "Buyer", as used herein, means each of them and also all of them.

## DEALER'S ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby assigns all of his or its right, title and interest in and to this Installment Note, Security Agreement and Disclosure Statement (the "Note"), in all Collateral which secures the Note in the Guaranty Agreement, and in any other agreement which secures or guarantees payment of this Note, to Cavalier Acceptance Corporation, its successors and assigns (herein called "Assignee"), with full power to take legal proceedings in its name or in the name of the undersigned with respect thereto. The undersigned represents, warrants and certifies as follows: that the undersigned has been duly licensed and has obtained all permits required under laws of the state of execution of the Note; that the Note arose out of a bona fide sale of the goods described therein; that the undersigned had title to and full right to sell free and clear of all encumbrances all goods which are part of the Collateral described on the Note; that the Collateral is correctly described on the Note; reference to the security interest reserved in the Collateral under the Note appears on the bill of sale and, where applicable, the certificate of title for the Collateral; that all signatures on the Note are genuine and authorized; that the address of the Buyer is correctly states on the Note; that during any period of transportation to the Homesite, the structural integrity of the Manufactured Home was maintained so that it will be livable and durable; that the installation or erection of the Manufactured Home on the Homesite complied with the manufacturer's requirements for its anchoring, support, stability and maintenance; that the undersigned has inspected both the Manufactured Home and its components for structural damage, and has also tested the performance of its plumbing, mechanical and electrical systems, and the undersigned has found them to be in good working condition and adequate for the Buyer's household use; that neither the undersigned nor, to the knowledge of the undersigned, the manufacturer or any other party to any transaction related hereto, has loaned, advanced or paid to or for the benefit of the Buyer any part of the costs incurred in the Buyer's "initial payment" (as that term is used in 24 CFR Part 201.23), and that such initial payment was made; that the Manufactured Home, any options (appliances, built-in items and equipment), any furniture supplied by the manufacturer, and any other specialty items included in the purchase price of the Manufactured Home or to be financed with loan proceeds have been delivered to and properly installed or erected on the Homesite, and that any other work to be accomplished at the Homesite and financed with loan proceeds has been completed; that the primary use for which the Buyer purchased the Collateral has been properly designated in paragraph 4 on the reverse side; that the Buyer was of full legal age and capacity to execute and deliver the Note; and that each Cosigner (as defined in the F.T.C. Credit Practice Rule) was given the separate Notice to Cosign before signing the Guaranty Agreement or the Note. If there is more than one Buyer on the Note, the foregoing warranties apply to each such Buyer and also to all of them. If any of the foregoing warranties should be breached or untrue, the undersigned agrees to purchase the Note from Assignee upon demand and will pay therefor the entire unpaid balance then owing under the Note plus any costs and expenses, including attorney's fees, incurred by Assignee with respect to the Note and this Dealer's Assignment. Such remedy of Assignee shall be cumulative and not exclusive and shall not affect any other right or remedy Assignee may have against the undersigned. If so requested by Assignee, the undersigned agrees to resell the Collateral if it is repossessed by Assignee.

Further, the undersigned agrees to indemnify Assignee against, and hold Assignee harmless from, all claims and defenses of the Buyer, or any of them, against the undersigned, signed which any such Buyer asserts against Assignee, whether such claims or defenses arise out of the Note or otherwise, and whether such claims or defenses are asserted in connection with Assignee's attempting to collect or enforce the Note or otherwise. The indemnity agreement herein made by the undersigned shall continue in full force and effect notwithstanding the payment or discharge of the Note. In the event that any such claim or defense is asserted by the Buyer or any of them, the undersigned agrees that it will, upon demand and at the option of Assignee, either repurchase the Note for the then remaining balance due thereon plus all expenses, including attorney's fees, incurred by Assignee in connection with any such claim or defense, or make the monthly payments on the Note as and when due from Buyer until such claim or defense is determined or resolved in favor of the undersigned or Assignee and reimburse Assignee for all costs, including attorney's fees, incurred by Assignee in connection with any such claim or defense.

Unless such undertaking is modified immediately or by another written agreement between the undersigned and Assignee, Assignee shall have full recourse against the undersigned in the event of any default by Buyer under the Note.

☐ with limited recourse per separate agreement

☐ with recourse up to $ _____ for _____ months

C+ Cliff Homes Inc
Corporation, Individual or Firm Name )

By _____
Officer, Owner or Partner (Give Title)

02 26 96
Date

## SECOND ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby assigns the above Installment Note, Security Agreement and Disclosure Statement and all of its rights in the Collateral described therein to _____, its successors and assigns.

CAVALIER ACCEPTANCE CORPORATION

By _____

Title _____

Date _____

AL-FIXED
BACK
F-008   1/92



**THE FOLLOWING ADDITIONAL TERMS ARE A PART OF THIS INSTALLMENT NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT.**

**11. Payment in Collected Funds; Application of Payments.** You agree that you will pay all sums due us under this Note in United States dollars in cash or immediately available funds at our offices. If you pay us by check or other instrument, we will not be required to give you credit for the payment until we receive final payment of the instrument in immediately available funds. We will apply your payments first to scheduled payments which are due and then to unpaid Late Charges, if any.

**12. Our Rights Are Cumulative; Waivers; Extensions.** You agree that our rights under this Note, under any other agreements we may have with you, and under applicable law are cumulative, and that we will not by any act, delay, omission, or otherwise be deemed to have waived any of our rights or remedies under this Note or under any other agreement or under applicable law unless the waiver is in writing and signed by us. We may accept late payments and partial payments and may delay in enforcing our rights without losing any of our rights. We may take any additional collateral for, or release any collateral for, or fail to perfect our security interest in any collateral for, this Note, and we may grant extensions, renewals or indulgences to you or to any other party obligated to pay this Note, all without releasing or in any way affecting your obligation on this Note.

**13. Transfer of the Collateral.** You agree not to give, sell, lease, rent or transfer the Collateral to any other person or entity or permit the Collateral to remain in the possession of any other person or entity for a period of 10 days or more without our express consent in writing. You agree not to grant a security interest in the Collateral to any other person or entity.

**14. Change of Mailing Address.** You agree to send us written notification of any change in either your mailing address or residence address not later than 10 days after the change of address is effective.

**15. Loss or Damage to Collateral.** You agree that you will bear at all times the risk of theft of, loss of, damage to, or destruction of, the Collateral. Your obligations under this Note will not be affected in any way by any such theft, loss, damage, or destruction. In the event any part of the Collateral is stolen, lost, damaged or destroyed, you agree to send us written notice of such theft, loss, damage, or destruction, and of the extent thereof, not later than 10 days after it occurs. We may, at our election, use the insurance proceeds paid as a result of any theft or loss of or damage to the Collateral to repair or replace the Collateral or we may apply such proceeds as a credit or reserve against your obligations under this Note. You hereby appoint us as your attorney-in-fact to file claims under any policy of insurance covering the Collateral (but we will not be obligated to file any such claim) and to endorse in your name any check or draft representing proceeds of any insurance on the Collateral.

**16. Location of Collateral.** You agree not to move the Collateral outside the state of Alabama without first obtaining our written consent. You agree to notify us of any change in the location where the Collateral is kept within the state of Alabama not later than 10 days after such change of location occurs.

**17. Repair of Collateral.** You agree to keep the Collateral in good order and repair, and not to sell, otherwise transfer, lease or rent the Collateral to any person, and not to abuse, waste or destroy the Collateral.

**18. Use of Collateral.** You agree not to use the Collateral in violation of any statute or ordinance or of any policy of insurance covering the Collateral. You agree to comply with the terms of any lease or agreement covering the premises where the Collateral is kept or stored, and to pay when due all charges for the lease of those premises or for the storage of the Collateral. If you fail to pay any such rent or storage charges when due, we may pay those charges (but we will not be obligated to pay any such charge), and you agree to reimburse us the amount of those charges upon our request. Such charges will bear interest at the rate set forth in paragraph 2 on the reverse side hereof. You agree that any such charge paid by us and the interest thereon, will be secured by our security interest in the Collateral.

**19. Discharge of Liens on Collateral.** You agree to pay when due all taxes, assessments, charges, liens and encumbrances at any time levied or placed on the Collateral. If you fail to pay any such charge promptly when due, we may pay such charge (but we will not be obligated to pay any such charge), and you agree to reimburse us the amount of those charges upon our request. Such charges will bear interest at the rate set forth in paragraph 2 on the reverse side hereof. You agree that any such charges paid by us and the interest thereon will be secured by our security interest in the Collateral.

**20. Removal of Non-collateral Personal Property.** If you are in default under this Note, you agree immediately to remove from the Collateral all of your personal property which is not part of the Collateral. If you fail to remove your personal property from the Collateral and we repossess the Collateral and your personal property which is in it or on it, you will not hold us responsible in any way for taking your personal property, and we may hold your personal property until you come to claim it. You agree to pay any reasonable cost we incur in storing your personal property after we take possession of it. Such charges will be secured by our security interest in the Collateral.

**21. Entry of Premises Where Collateral Located.** You agree that we and our agents may come upon any premises where the Collateral is located and may enter the Collateral from time to time to inspect the Collateral and, if you are in default under this Note, to repossess the Collateral. You agree that our entry upon such premises or the Collateral for these purposes will not be a trespass and that our repossession of the Collateral after default will not be a trespass to, or a conversion of, the Collateral. If we should repossess the Collateral or any part of it when you are not in default, you agree that our liability to you will be limited solely to the fair rental value of such Collateral while it was in our possession.

**22. Assembling Collateral After Default.** You agree that if you are in default under this Note, you will assemble the Collateral at our request and make it available to us at any place we may reasonably designate.

**23. Repossession and Sale of Collateral.** If you are in default under this Note, we have the right to repossess the Collateral and to sell or otherwise dispose of it in a commercially reasonable manner. After subtracting from the proceeds of the sale or other disposition of the Collateral the costs (including attorney's fees as provided in paragraph 9 on the reverse side) incurred by us in repossession the Collateral, repairing it, storing it, preparing it for sale, advertising the sale, and conducting the sale, we will apply the balance of the proceeds of the sale or other disposition of the Collateral as a credit against the amount you owe us under this Note. Any amount by which the proceeds of the Collateral exceeds the amount you owe us under this Note will be paid to you or to the person then entitled to recieve such amount by applicable law or agreement. You will remain obligated to us for any deficiency between the balance of the proceeds of the Collateral and the amount you owe us under this Note, except that if we repossess or voluntarily accept surrender of the Collateral and the original cash price of the Collateral repossessed or surrendered was $1,000 or less, you will not be obligated to pay any such deficiency and we will not be obligated to sell the Collateral. You will be entitled to recover the Collateral at any time before we sell it or otherwise dispose of it by paying to us the full amount you owe us under this Note and any other agreement we have with you which is secured by this Note and which is in default, plus all expenses we have incurred in repossessing the Collateral, preparing it for sale, storing it, and preparing for the sale.

**24. Notice of Foreclosure Sale.** To the extent that we are required to give you notice of any sale or other disposition of the Collateral after default, you agree that the requirement of reasonable notice will be met if we mail or deliver the notice to you at your address shown on this Note, or such other address as you may have furnished us in writing for that purpose, not later than 5 days before the time of such sale or other disposition of the Collateral.

**25. Your Failure to Maintain Insurance.** If you fail to keep in force for our benefit any insurance required by this Note, we may purchase such insurance or, after giving 10 days notice to you, we may purchase insurance covering only our interest in the Collateral. In either event, you agree to reimburse us at our request for the cost of such insurance. Such insurance premiums will bear interest until paid at the rate set forth in paragraph 2 on the reverse side hereof.

**26. Cancellation of Insurance After Default.** You agree that if you are in default under this Note, we are authorized to cancel any insurance coverage on the Collateral, to receive and give receipt for any unearned or returned premiums on such insurance, to endorse in your name any check or draft for those unearned or returned premiums, and to apply those unearned or returned premiums as a credit against your obligations under this Note.

**27. Continued Perfection of Security Interest.** You will furnish to us such additional information and will execute and deliver to us such financing statements, title documents, and other papers, and will do all other acts and things which we may from time to time reasonably request, in order to perfect and continue perfected our security interest in the Collateral, and to continue our security interest as a first lien on the Collateral. You agree that we may record or file a carbon, photostatic or other copy of this Note as a financing statement in any public office we deem necessary or appropriate, and such copy shall have the same effect as if the original signed copy hereof had been recorded or filed.

**28. Assignment of Note to CAC.** You acknowledge that you understand that Seller intends to assign this Note to Cavalier Acceptance Corporation, Post Office Box 898, Industrial Park, Hamilton, Alabama 35570. You agree that if CAC approves your credit and accepts the assignment, after you receive notice of the assignment, you will make your payments under this Note directly to CAC.

**29. Certifications of the Buyer.** You hereby represent, warrant, acknowledge and certify to the Seller and to CAC (and any assignee) as follows: (1) your "initial payment" (as that term is used in 24 CFR Part 201.23) was made, and no part of the costs payable by you and included therein was borrowed from or otherwise advanced or paid to or for your benefit by the Seller, the manufacturer or any other party to any transactions related hereto, and you have disclosed fully the source, and any security for, any loan obtained from someone other than a party to any transaction related hereto (if all or part of the initial payment was obtained through such a loan); (2) if you purchased the wheels and axles as specialty items with loan proceeds they are part of the Collateral, and they may be sold or otherwise disposed of only with our prior approval; (3) so long as any portion of your purchase loan obligation with us is unpaid the Manufactured Home may be moved to a new site only with our prior approval, and only so long as you comply with the applicable requirements for such a move set forth in 24 CFR Part 201.21(c) and (e); and (4) prior to disbursement of the proceeds of the principal sum described in paragraph 2 on the reverse side, you paid in full the unpaid balance (if any) on any other insured manufactured home loan secured by a different property, unless the Secretary of Housing and Urban Development has waived this requirement.

**30. Miscellaneous.** This Note shall be governed, construed, and enforced in accordance with the laws of the state of Alabama. If any provision of this Note is unlawful or unenforceable, or if any provision of this Note does not comply with any state or federal laws or regulations, each such provision shall be without force and effect without thereby affecting any other provision hereof. No provision of this Note is intended to require the payment of interest or finance charges in excess of the maximum permitted by law. If any court determines that interest or any finance charge in excess of the maximum permitted by law is provided for in this Note, the provisions of this paragraph will govern, and you will not be obligated to pay the amount of such interest or finance charge to the extent that it is in excess of the maximum interest or finance charge permitted by law. This Note is binding upon you and your heirs, administrators, executors and assigns. The paragraph headings in this Note are for convenience only; they do not form a part of this Note and do not add to or subtract from the provisions of this Note.

Standard
MOBILEHOME INVOICE
and
BILL OF SALE

# C & C Manufactured Homes, Inc.
607 S. 6th St.
Opelika, Alabama 36801
(205) 749-1492 · 749-1493

SOLD TO: Brenda T. Spurlock
128 The Lane
ADDRESS Phenix City, AL 36869

DATE    02-26-96

| | | | |
|---|---|---|---|
| SALESMAN Hoyett Braswell | | | |

| MAKE Buccaneer | MODEL Buccaneer | LENGTH 80 | WIDTH 28 | YEAR 1996 | STOCK NO. NA |
|---|---|---|---|---|---|
| SERIAL NUMBER ALBUS24636AB | COLOR White | NEW OR USED New | | | |

| | PRICE OF UNIT | $ 63,832.00 |
|---|---|---|
| OPTIONAL EQUIPMENT | Included | |
| COST OF SET-UP PARTS | Included | |
| | | |
| | SUB-TOTAL | 63,832.00 |
| OFFICIAL FEES, LICENSE, TITLE, ETC. | | 33.00 |
| | SALES TAX | 1,264.00 |
| | DELIVERED PRICE TOTAL | $ 65,129.00 |
| USED TRADE-IN ALLOWANCE | $ NA | |
| LESS: BAL. DUE ON ABOVE | $ NA | |
| NET ALLOWANCE | NA | |
| INITIAL DOWN PAYMENT | 7,675.00 | |
| CASH BEFORE DELIVERY | NA | |
| | LESS TOTAL CREDITS | 7,676.00 |
| | UNPAID BALANCE | $ 57,454.00 |
| COST OF INSURANCE 00 MONTHS | | 00 |
| | TO BE FINANCED | $ 57,454.00 |
| | TIME SALES DIFFERENTIAL | 96,143.00 |
| | TOTAL CONTRACT OR TIME BALANCE | $ 153,597.00 |

DESCRIPTION OF TRADE-IN

MAKE: N/A

YEAR:          BEDROOMS:

MODEL:

COLOR:

LENGTH:        WIDTH:

SERIAL NO.:

BALANCE OWED TO:

REMARKS:

INSURANCE COVERAGE
N/A

☐ FIRE AND THEFT—CAC

☐ FIRE AND THEFT—COMPREHENSIVE

☐ COLLISION—Amt. Deductible $

☐ LIFE, HEALTH, ACCIDENT

☐ CREDIT LIFE _____ YEARS

☐ PERSONAL EFFECTS

☐ VSI

I HEREBY ACKNOWLEDGE RECEIPT OF THE DESCRIBED MOBILEHOME AND A COPY OF THIS INVOICE.

BY *Brenda T. Spurlock*

If this Unit is financed it is not to be moved from location of delivery without written permission and obtaining collision insurance.

FINANCED THROUGH
Cavalier Acceptance Corp.

FIRST PAYMENT DUE    March 26    19 96

300 MONTHS @ $ 511.99

EXHIBIT
B

Blumberg No. 5118

# ORIGINAL INVOICE

**N⁰ 0019797**

**BUCCANEER HOMES OF ALABAMA, INC.**

| INDUSTRIAL PARK | INDUSTRIAL PARK |
| P.O. BOX 1418 | P.O. BOX 389 |
| HAMILTON, AL 35570 | WINFIELD, AL 35594 |

(205) 921-3135

**SOLD TO:**
C & C Manufactured Homes, Inc.
607 S. 6th Street
Opelika, AL 36801

Same

P.O. #34-5280

| CUSTOMER NO. | CUSTOMER CODE | INVOICE CODE |
|---|---|---|
| | BAR4373400 | 1115-01 |

| SQ. FEET 1976' | PRINT NO. 5280 | MODEL BUCCANEER 1996 80X28 4BR 2B |

| SERIAL NUMBER ALBUS-24636AB | | COLOR WHITE |

| DISHWASHER NO. AR851182B | REFER NO. VM254979 | RANGE NO. 2360143 |

| FURNACE NO. 960116678 | MICROWAVE NO. None | WATER HEATER NO. B96418242 |

| EGRESS WINDOW NO. | EGRESS WINDOW NO. | EGRESS WINDOW NO. |

| EGRESS WINDOW NO. | FLOOR LENGTH 76' | FLOOR WIDTH 26' |

| INVOICE DATE 2-23-96 | DATE SHIPPED 2-23-96 | SHIPMENT APPROVAL |

**FINANCED BY:**
Deutsche Financial Services Corporation
2859 Paces Ferry Road
Suite 920
Atlanta, GA 30339

2-21-96  02210029

## TOTAL BASE PRICE — 31,145.00

### OPTION DETAIL

| OPT. NO. | DESCRIPTION | AMOUNT |
|---|---|---|
| | Dlx. molding | 370.00 |
| | 20' FF refrigerator | 495.00 |
| | Dlx. gas range | 100.00 |
| | Dishwasher | 400.00 |
| | Economy pkg. | 115.00 |
| | Ceiling fan | 150.00 |
| | Light kit for ceiling fan | 45.00 |
| | Brass/glass chandlier | 15.00 |
| | #112 fireplace | 1,695.00 |
| | Phone jacks (6) | 90.00 |
| | Beveled counter tops | 100.00 |
| | Wood oak cabinets | 576.00 |
| | Ceramic backsplash | 150.00 |
| | Base shelves | 35.00 |
| | OH cabinet @utility | 85.00 |
| | Vinyl lap | 1,200.00 |
| | Wood door surround | 125.00 |
| | Residential door | 175.00 |
| | Bay window | 225.00 |
| | Storm windows | 475.00 |
| | Dlx. window pkg. | 320.00 |
| | Skylight | 60.00 |
| | ±Carpet | 1,000.00 |
| | Hardwood foyer | 50.00 |
| | 48" shower door | 50.00 |
| | Gird mirrors @ tub (4) | 240.00 |
| | Linen cabinet | 65.00 |
| | 54" 1 pc. tub | 180.00 |
| | Linen cabinet — Swag | 80.00 |
| | Lumber surcharge | 500.00 |
| | HUD | 110.00 |
| | | |
| | (The following items are installed by the Retailership. Certification of installation can be obtained by the Dealer. ) | |
| | dealer install furniture | 2,000.00 |

| TOTAL OPTIONS | 11,276.00 |
|---|---|
| FREIGHT | 1,263.00 |
| ~~SALES TAX (EXAMPLE)~~XXX    AL SEAL | 50.00 |
| TOTAL INVOICE PRICE | 43,734.00 |

PLEASE REMIT TO: Buccaneer Homes of Alabama, Inc. P.O. Box 190212, Birmingham, AL 35219

**HUD LABEL NO.** _____ NTA  528108 & 528109

"Manufacturer certifies that to the best of its knowledge and belief, this mobile home is constructed in conformance with the Federal Mobile Home Construction and Safety Standard in effect on the date of manufacture, H.U.D. Certification.



## — IMPORTANT NOTICES —

**1. FHA Title I Financing**
This Home will not qualify for FHA Title I financing unless the original invoice or a certified copy of the original invoice is accompanied by the appropriate "FHA Invoice Supplement" containing necessary certifications and signed by an authorized representative of Buccaneer Homes of Alabama, Inc.

**2. VA Manufactured Home Financing**
This Home will not qualify for VA Manufactured Home Financing unless the original invoice or a certified copy of the original invoice has been duly stamped with the necessary VA Certification and signed by an authorized representative of Buccaneer Homes of Alabama, Inc.

**3. Freight**
Amounts charged for freight shown in this invoice include charges for $/Mile, Permits, Escorts, Etc. (Less Allowances, if any)

**4. SVPP (Special Volume Purchase Program)**
0
Amount Reflected in this invoice $ _____
This amount paid to Purchaser only if minimum Purchase Volumes are attained.

**5. VIP (Volume Incentive Program)**
The Purchaser may qualify for VIP Payments if certain Purchase Volumes are attained. Copies of our VIP Plan are available upon written request to our corporate offices. Inquiries should be sent to:
Vice President of Marketing
P.O. Box 1418, Hamilton, AL 35570
Amounts paid under our VIP Program and other Marketing Programs are not readily identifiable on a per-unit basis. These amounts are charged to overhead and profits as a cost of doing business.
Other Marketing Programs with amounts identifiable on a per-unit basis will be listed as separate line items on this invoice.

**6. Furniture and Appliances**
Information regarding any Furniture or Appliances shipped with this home, including manufacturer, model, type, and wholesale price, is available upon written request to our corporate offices. Inquiries should be sent to:
Vice President of Marketing
P.O. Box 1418, Hamilton, AL 35570

**7. Association Dues**
The Base Price shown on this invoice includes $50.00 paid by Buccaneer Homes of Alabama, Inc. for Manufacturer's dues to State Associations.

**8. Tires, Rims, and Axles**
This Home may be equipped with tires, rims, and/or axles which have been inspected relative to appearance and applicable safety standards.

**9. Truth in Invoicing**
Buccaneer Homes of Alabama, Inc. certifies that (1) This invoice is issued in compliance with the Truth in Invoicing Practices Statement as approved by resolution of the Manufactured Housing Institute on March 20, 1985; (2) That the Manufacturer, in preparing and certifying this invoice and any disclosures required to be made by the statement, is providing to the best of its knowledge and belief accurate, complete, and truthful information, and that (3) The Manufacturer expressly acknowledges that Lenders, Insurers, and Governmental/Quasi-Governmental entities rely on invoices and any disclosures required to be made by the statement to make finance, guarantee, and purchase decisions.

_____
Authorized Manufacturer Representative - Title

**REMARKS:**

EXHIBIT
C

Blumberg No. 5118



**Cavalier**
**ACCEPTANCE CORPORATION**
P.O. Box 898
Hamilton, AL 35570

010767

FIRST NATIONAL BANK OF HAMILTON    61-285
HAMILTON, ALABAMA 35570            622

| DATE | CHECK NO. | CHECK AMOUNT |
| --- | --- | --- |

02/29/96    10767   $***43,734.00

\*\*\* FORTY THREE THOUSAND SEVEN HUNDRED THIRTY FOUR & 00/100

LOAN PROCEEDS ACCOUNT
**NON-NEGOTIABLE**

PAY ➡
TO THE          DEUTSCHE FINANCE
ORDER
OF

AUTHORIZED SIGNATURE(S)

⑈010767⑈ ⑆06220285⑈ 047 1885 7⑈

| DATE | REFER # | REASON | AL | AMOUNT |
| --- | --- | --- | --- | --- |
| 02/29/96 | 2275 | SF CONTRACT:  SPURLOCK | | 43,734.00 |

C & C HOMES/SPURLOCK, BRENDA/ALBUS24636 AB



EXHIBIT
D

**Cavalier Acceptance Corporation**
**Check Voucher**
**Funding Account**

Invoice # Spurlock, Brenda                 Voucher N? 0010423

Vendor # _____                 Prepared By BB

Date  2/79/96                            Approved By _____

Amount $ _____

Payee Name  Al Proceeds _____

Description _____

| Amount | Acct. | Amount | Acct. | Amount | Acct. |
|--------|-------|--------|-------|--------|-------|
| ⋀      | 1510  | _____ | 1516  | _____ | 1521  |
| _____ | 1511  | _____ | 1517  | _____ | 1522  |
| _____ | 1512  | _____ | 1518  | _____ | 1523  |
| _____ | 1513  | _____ | 1519  | _____ | 1524  |
| _____ | 1514  | _____ | 1520  | _____ | 1525  |
| _____ | 1515  | _____ | _____ | _____ | _____ |

Deutsche Finance                    43,734.00
Alabama Dept of Revenue                 33.00
C&C Homes                           13,687.00
                                    _____
                                    57,454.00

EXHIBIT
F
Blumberg No. 5118

*Cavalier Acceptance Corporation*
*P.O. Box 898*
*Hamilton, AL  35570*

**CONVENTIONAL LOAN CHECKLIST**

Account Number:
Borrower's Name: Spurlock Brenda T
Co-Borrower's Name:

_____ Contract signed by borrower(s) and authorized agent for dealer
(Contract must be complete, including location of MH unit)
Description & serial number match manufacturer's invoice. If
insurance financed, insurance section is complete).
*ALABAMA CONTRACTS ONLY:* Signed dealer assignment on back.

**DOCUMENTS**

_____ Purchase agreement completed and signed.
_____ CAC credit application completed and signed by borrower(s).
(Government monitoring information completed or initialed).
_____ Landlord Lien Waiver: FOR PRIVATE PROPERTY ONLY.
_____ Location Certificate completed and signed by dealer & borrower(s).
_____ Receipt for Cash Down Payment.
_____ Borrower Power of Attorney (2 for singles, 4 for doubles).
_____ Manufacturer's Invoice (New or copy if P/O).
_____ FTC Insulation Certificate signed by Buyer(s) and Seller(s).
_____ MH Inventory Checklist.
_____ Supplemental Invoices (For all dealer installment options)
*ALABAMA LOANS ONLY:* Waiver of Homestead Exemption

Floorplan Source: _Deutsche_    Telephone: (___) ___-_____
Mailing Address: _2859 Paces Ferry Rd  Suite 920_
                 _Atlanta, GA 30339_

**FILING AND TITLING**

_____ Title and/or UCC Filing Applied for (Verification attached)
_____ Dealer Power of Attorney

**INSURANCE**

_____ Insurance Binder/Application: Must have flood in effect.  Must show
CAC as payee and show coverage greater than or equal to sales price
plus sales tax.
*ALABAMA LOANS ONLY:*  Insurance Letter

SPECIAL INSTRUCTIONS:
PLEASE ASK BORROWER(S) TO CALL 1-800-844-4845 FOR TELEPHONE AUDIT.
THIS MUST BE COMPLETED BEFORE LOAN PACKAGE IS FUNDED.


EXHIBIT
F
Blumberg No. 5119

LOAN PROCEEDS WORKSHEET

CUSTOMER NAME: *Spurlock, Brenda*  ACCOUNT NUMBER: _____

AMOUNT FINANCED COMPUTATION

| | | |
|---|---|---|
| Base Sales Price | | 60,832.00 |
| +Optional Equipment | $ | 3000.00 |
| -Sub-Total | | 63,832.00 |
| +Sales Tax | | 1264.00 |
| +Recording Fees | | 33.00 |
| +Insurance | | |
| +Other non-taxable items | | |
| -Cash Purchase Price | | 65,129.00 |

| | | |
|---|---|---|
| Trade-in Allowance | | |
| -Balances Due on Above | | |
| -Net Trade Allowance | | |
| +Cash Down Payment | | |
| -Total Down Payment | | 7675.00 |
| | | |
| -Total Down Payment | | 7675.00 |
| -Unpaid Cash Balance | | |
| +Finance Charges | | |
| -Amount Financed | | 57,454.00 |

PROCEEDS PAYOUT COMPUTATION

** Only subtract items from Amount Financed that are paid by CAC **

| | | | |
|---|---|---|---|
| Amount Financed | $ | 57,454.00 | Check#_____ |
| -Floorplan Payoff | | 43,734.00 | |
| To: *Deutsche Finance* | | | |
| | | | |
| -Sales Tax | | | Check#_____ |
| To: _____ | | | |
| | | | |
| -Recording Fees | | 33.00 | Check#_____ |
| To: *Alabama Dept of Revenue* | | | |
| | | | |
| -Insurance Premium Payment | | | Check#_____ |
| To: _____ | | | |
| | | | |
| -Dealer Origination Fee | | 0.00 | Check#_____ |
| | | | |
| -Dealer Proceeds | | 13,687.00 | Check#_____ |
| To: *C+C Manufactured Homes* | | | |

Reviewed By: *Richard Lovett*     Date: 2/29/96

*BB*

EXHIBIT

G

Blumberg No. 5118

22. 2/21/96



**KAUFMAN SUPPLY**

Serving the Housing Industry Since 1962.

ATLANTA, GEORGIA 30354 --- 3037 COMMERCE WAY

PURCHASE ORDER

NO 24636

| [ ] SERVICE [X] INSTALL | [ ] PICK UP [X] DELIVER | PHONE 749/492 | REPAIR IN [ ] HOME [ ] SHOP | DATE OF ORDER 2-26-96 |
|---|---|---|---|---|

NAME C+C Homes

DATE PROMISED ASAP

ADDRESS 607 S 6th

APARTMENTS

CITY Opelika, AL

DATE OF ORIG. INSTAL.

| MAKE BUCC | MODEL 28x80 | SERIAL NO. 4636 |
|---|---|---|

[ ] ESTIMATE
[ ] WARRANTY
[X] CONTRACT
[ ] CASH
[ ] CHARGE
[ ] C.O.D.

NATURE OF SERVICE REQUEST ▷ Install - Cust - SPURLOCK

| QUAN. | PART NO. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| | | 28x80 Underpinning | | |
| | | Installed | | |
| | | Brenda Spurlock | | |
| | | Phenix City, AL | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

SERVICE PERFORMED

TOTAL MATERIAL

TECHNICAL SERVICE TIME

Thank You!

DATE COMPLETED

CASH ON COMPLETION OF WORK →

TAX

TOTAL 600 —

INVOICE COPY

I hereby accept above performed service, and charges, as being satis-factory and acknowledge that equipment has been left in good condition.

Technician _____  Customer's Signature _____

See reverse side for Guaranty



EXHIBIT

H

Cavalier Acceptance Corporation
P.O. Box 898
Hamilton, AL   35570

DATE: 02-26-96

"ANY CONTROVERSY OR CLAIM . . . ARISING OUT OF OR RELATING TO THE
INTERPRETATION, PERFORMANCE OR BREACH OF ANY PROVISION OF RETAIL
INSTALLMENT CONTRACT DATED 02 26 96 ON A **1996 Buccaneer
80 X 28 Serial# ALBUS-24636 AB** SHALL BE SETTLED EXCLUSIVELY BY
ARBITRATION (IN ACCORDANCE WITH THE RULES AND REQUIREMENTS OF THE
AMERICAN ARBITRATION ASSOCIATION.)"

_____          _____(LS)
DEALER                                    BORROWER

                                          _____(LS)
                                          CO-BORROWER

SUBSCRIBED AND SWORN TO BEFORE ME THIS 26 DAY OF Feb , 19 96 .

NOTARY PUBLIC FOR ____ COUNTY, STATE OF AL .

SEAL

EXHIBIT

I



# ANNUAL REPORT DETAILS
## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

## 1996 Annual Report

```
Reporting
    Address...:   DEUTSCHE FINANCIAL SERVICES CORPORATI
                  ATTN TAX DEPT
                  645 MARYVILLE CENTRE DR
                  SAINT LOUIS, MO  63141-5800


Agent As
    Reported..:   CORPORATION COMPANY THE
                  60 COMMERCE ST
                  MONTGOMERY, AL  36104-3530


President
    Of Corp...:   BROWN, MELVIN F
                  9034 SEDGWICK PLACE DR
                  SAINT LOUIS, MO  63124-1891


Secretary
    Of Corp...:   BURCHINOW, NARAN U
                  2449 HERMITAGE HILL LN
                  SAINT LOUIS, MO  63131-3321


Alabama
    Business..:   NONE


General
    Business..:   FINANCE & EQPT LSG
                  1 E 1ST ST
                  RENO, NV  89501


Telephone
    Number....:   314-542-3636


Processed
    By Revenue:   04-30-1997
```

PREVIOUS PAGE



© 2006, Office of the Secretary of State, State of Alabama



# TRANSACTIONS

### Office of the Secretary of State
### State of Alabama


**INITIATE NEW BROWSE**

```
Corporation                                              F/C 853-509
  Legal Name:    GE Commercial Distribution Finance Corporation


                ---- Legal Name Changed From: ----------------------------------
12-17-2002..:   Deutsche Financial Services Corporation

06-16-1995..:   ITT Commercial Finance Corp.

02-06-1986..:   ITT Industrial Credit Company

                ---- Legal Name Merged In: ----------------------------------
04-10-1997..:   Deutsche Financial Services Holding Corporation

02-06-1986..:   ITT Real Estate Services, Inc.

02-06-1986..:   ITT Commercial Finance Corp.

                ---- Registered Agent Changed From: ----------------------------
02-01-1990..:   BALL JR, FRED S
                BALL, RICHARD A
                200 S LAWRENCE ST
                MONTGOMERY, AL
```

**← PREVIOUS PAGE**

© 2006, Office of the Secretary of State, State of Alabama



EXHIBIT

2

Blumberg No. 5118

Page 1 of 1



# CORPORATE DETAILS

## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

```
Corporation                                              F/C 853-509
  Legal Name:   GE Commercial Distribution Finance Corporation

State Of Inc:   Nevada

Qualified...:   02-27-1973  Withdrawn.: 10-21-2004

Serv Of Proc:   5595 TRILLIUM BLVD
                HOFFMAN ESTATES, IL  60192

Date Of Inc.:   * Not On Data Base

Reg Agent...:   THE CORPORATION COMPANY
                2000 INTERSTATE PARK DRIVE STE 204
                MONTGOMERY, AL  36109

Prin Address:   230 HAMM BLDG
                SAINT PAUL, MN

Nat Of Bus..:   ---
```

TRANSACTION LIST          2004    ANNUAL REPORTS





© 2006, Office of the Secretary of State, State of Alabama

http://arc-sos.state.al.us/CGI/SOSCRP10.mbr/output?PGM=2&P01=853509M          11/5/2006